**PATTERSON et al. v. JOINES.**

No. 12797—Opinion Filed July 14, 1925.

Rehearing Denied Jan. 12, 1926.

(Syllabus.)

1. **Indians—Curtesy Rights of Surviving Husband in Allotment.**

The surviving husband of a deceased Choctaw Indian woman who was duly enrolled, but died before receiving her allotment, is entitled to curtesy in said lands, under the facts stated in the opinion.

**2. Courts — Jurisdiction — County Court — Guardianship Proceedings Transferred from Indian Territory Court.**

Where a guardian was appointed for minors by the United States court of the Central district at Durant, Okla., and said proceedings pending in said court at the time of admission of the state, they were by section 19 of the Enabling Act, June 16, 1906, and section 23 of the Schedule of the Constitution, transferred to the county court of Bryan county, in which was located the court in which the said cause was pending; and the county court of Bryan county, as successor to the United States court of the Central district at Durant, acquired jurisdiction of this guardianship matter, with power to sell and convey all lands belonging to said minors within the state of Oklahoma. And this jurisdiction was exclusive of every other county court in the state of Oklahoma.

**3. Limitation of Actions—Remaindermen not Affected Till Termination of Life Estate.**

The statute of limitations does not begin to run against the owners of remaining interest in land until the life estate has terminated.

**4. Guardian and Ward — Invalidity of Guardian's Sale—Delayed Confirmation.**

Under section 1479, C. O. S. 1921, which provides: "No order of sale granted in pursuance of this article (chapter) continues in force more than one year after granting the same, without a sale being had." Held, that an order of sale made in 1907 by the United States court at Ardmore and approved and confirmed by the county court of Carter county on the 14th day of July, 1913, was in violation of this section of the statutes and void and of no force and effect.

Error from District Court, Murray County; T. P. Clay, Assigned Judge.

'Action by W. M. Patterson et al. against U. S. Joines to quiet title in plaintiffs to real estate. Judgment for defendant, and plaintiffs bring error. Reversed.

Hatchett & Semple, for plaintiffs in error.

Wm. G. Davisson, for defendant in error.

CLARK, J. The plaintiffs in error instituted this suit in the district court of Murray county against the defendant in error, U. S. Joines, for the recovery of the allotment of Emma Patterson, deceased. The case was tried in the lower court upon an agreed statement of facts.

The facts necessary for the determination of this cause are as follows: Emma Patterson died intestate on the 14th day of March, 1906, and the lands involved herein were allotted to her after her death. She

was survived by her husband, W. M. Patterson, and the following children: Doroth A. McFarland, nee Patterson, 26 years and 8 months old; Shelby A. Patterson, 23 years and 8 months old; Howell M. Patterson, 20 years and 8 months old; J. Allen Patterson 17 years and 6 months old; and Ruby E. Patterson, 15 years and 3 months old; the above being the age of said plaintiffs on the 20th day of December, 1920. The petition alleged that W. M. Patterson took the life estate in the land of his deceased wife, and that the children of the said Emma Patterson inherited the fee-simple title to said land subject to the life estate of W. M. Patterson, the said children being of one-eighth Indian blood, and the said W. M. Patterson not of Indian blood.

The defendant answered and denied that said W. M. Patterson, husband of said Emma Patterson, was one of the heirs of the said Emma Patterson, aforesaid, as in said petition charged, or that he was entitled to a life estate in said land. The defendant admitted that the children above named were the heirs of the said Emma Patterson. Further answering, the defendant said that the lands described in plaintiffs' petition were filed after the death of the said Emma Patterson, and asserted title to said land by virtue of a guardian's deed executed on the 5th day of October, 1907, by said W. M. Patterson, as guardian of the Patterson children. And further answering, the defendant claimed, ever since the 5th day of October, 1907, to have been in possession of said land; and that thereafter and on about the 5th day of August, 1913, in order to correct said errors of description of said former deed, a subsequent deed was executed by the said W. M. Patterson, as guardian, in favor of this defendant; that said conveyances were duly, orderly, and regularly approved by the probate court having jurisdiction of said estate, and were in all things sufficient to and did convey all the titles of the said heirs of Emma Patterson to this defendant. Defendant, further answering, and by way of estoppel against W. M. Patterson, pleaded that the said W. M. Patterson held himself out as guardian of the said minor children, aforesaid, and represented to the defendant that said children were the sole heirs of the said Emma Patterson, deceased, and that by reason thereof he was estopped from setting up any claim or any interest in and to said land. Defendant pleaded the statute of limitations, section 4654 of the Laws of the State of Oklahoma, 1910, and also section 4471, Mansfield's Digest of the Laws of Arkansas.

It appears from the agreed statement of

facts that W. M. Patterson was appointed guardian of the above-named Doroth A. Mc-Farland Patterson on December 7, 1904, and of Shelby A. Patterson and Howell M. Patterson on the 19th day of September, 1904, and of J. Allen Patterson and Ruby E. Patterson on the 22nd day of April, 1907, in the United States district court of the Central district of Indian Territory at Durant. And that on the 24th day of April, 1907, W. M. Patterson, as duly qualified and acting guardian of the persons and estates of the above-named minors, filed in the United States court for the Southern district of Indian Territory at Ardmore, a petition for the sale of the lands involved in this litigation. That on the 2nd day of May, 1907, the United States court sitting at Ardmore, Indian Territory, in said Southern district, entered its order authorizing said guardian to sell said land. That on the 8th day of October, 1907, said W. M. Patterson, as guardian of said minors, filed in the United States district court at Ardmore, his report of the sale, which shows that W. M. Patterson, as such guardian, sold said lands on the 5th day of July, 1907, to the defendant, U. S. Joines, for the sum of $2,000, and requested that said sale be confirmed. On the 5th day of October, 1907, W. M. Patterson, as guardian of said minors, executed a guardian deed to the defendant, U. S. Joines. The agreed statement of facts further shows that on the 14th day of July, 1913, the county court of Carter county, of the state of Oklahoma, entered an order confirming sale of said real estate by said guardian, and that on the 5th day of August, 1913, W. M. Patterson, as guardian of said minors, executed a guardian deed of said land to said defendant, U. S. Joines.

The trial court's conclusions of law are as follows:

"I find that W. M. Patterson upon the death of his wife, Emma Patterson, acquired a life estate or estate by curtesy in the lands in controversy. I find further, that the interest acquired by him is barred by the seven years statute of limitations of the Arkansas law then in force in the Indian Territory; the lands having been sold and report thereof having been made in 1907, prior to the time said territory became a part of the state of Oklahoma.

"Second: I further find that by the acts and conduct of said W. M. Patterson, that he was estopped to bring this action by reason of his conduct, in putting defendant in possession at the time of sale of his wards' interest and allowing him to remain in possession for fourteen years without complaint.

"Third: I find that the Southern district of the Indian Territory had jurisdiction to authorize the guardian's sale and the confirmation thereof by the county court of Carter county was not void, and that plaintiffs are not in position to attack the same collaterally.

"Fourth: I find that the minor heirs were authorized to sell through their guardian without joining any adult heirs, there being no adult heirs at that time.

"Fifth: I find that all adult heirs, to wit, Doroth A. McFarland and Shelby Patterson, are barred by the statute of limitations and resolve all issues in favor of the defendant."

The court rendered judgment for the defendant, and plaintiffs prosecute error to this court.

The first question in this case, "Did W. M. Patterson, the husband of Emma Patterson, take an estate by curtesy in said land?" This land was allotted to Emma Patterson by virtue of the Act of Congress approved July 1, 1902, known as the Supplemental Agreement. Section 22 of said act provides:

"If any person whose name appears upon the rolls, prepared as herein provided, shall have died subsequent to the ratification of this agreement, the lands to which such person would have been entitled if living shall be allotted in his name, and shall, together with his proportionate share of other tribal property, descend to his heirs according to the laws of descent and distribution as provided in chapter forty-nine of Mansfield's Digest of the Statutes of Arkansas."

In the case of Shulthis v. McDougal et al., 95 C. C. A. Reports, 615, the Circuit Court of Appeals had this act of Congress under consideration, and in the body of the opinion said:

"Whether the ancestor was actually seized of the property or not in his lifetime, was immaterial. It was the intent of the statute that the property should pass by the same right and in the same manner that it would have passed if the person enrolled had survived to receive his allotment."

In the case of Ned et al. v. Countiss et al., 84 Okla. 138, 203 Pac. 168, this court, speaking through Mr. Justice Nicholson, in the second syllabus of said opinion, said:

"The law of descent in force at the date of the certificate of allotment to a member of the Choctaw Tribe of Indians is the governing law, and this law relates back to the death of the Indian entitled to take the allotment, and identifies the heirs as of that date, and such law should be applied as if the deceased had received title to his allotment and died seized thereof."

In the case of Morris et al. v. Sweeney et al., 53 Okla. 163, 155 Pac. 537, by Mr. Justice

Hardy, the first syllabus reads as follows:

"The surviving husband of a deceased full-blood Mississippi Choctaw Indian woman who was duly enrolled, but who died before receiving patent to her allotment, is entitled to curtesy in said lands, under the facts stated in the opinion."

W. M. Patterson having been lawfully married to Emma Patterson, and children having been born alive of the marriage, he would be entitled to an estate by curtesy in the allotment of his deceased wife, under the law in force at the date of her death. Johnson et al. v. Simpson, 40 Okla. 413, 139 Pac. 129; Pierce et al. v. Ellis et al., 51 Okla. 710, 152 Pac. 340; Cook et al. v. Childs et al., 49 Okla. 321, 152 Pac. 88.

The next proposition, "Did the guardian deed executed by W. M. Patterson on the 5th day of October, 1907, convey any interest in said lands to the defendant, U. S. Joines?" We think not, for the reason that the sale had not been confirmed, and before the guardian could execute a valid deed, said sale must be confirmed. And it is agreed in this case that the only confirmation of sale of said land was by the county court of Carter county on the 14th day of July, 1913. In the case of Reid et al. v. Hart, 45 Ark. 41, the third paragraph of the syllabus reads as follows:

"Sales of real estate under orders of the probate court pass no title until confirmed by the court. The recital of confirmation in the purchaser's deed is prima facie evidence of the fact, if the deed be properly acknowledged and recorded."

So this deed, being executed without any confirmation of sale by the United States court of the Southern district at Ardmore, was void and of no effect and passed no title to the lands involved herein.

The question is raised by plaintiffs in error that the United States court of the Southern district at Ardmore did not have jurisdiction to order the sale of this land, for the reason that the guardian was appointed by the United States court of the Central district at Durant, and said guardianship matters at all times were pending in said court. We think this case can be disposed of without passing on this question.

The next question, "Did the county court of Carter county have jurisdiction to confirm this sale?" Which order of confirmation was made on the 14th day of July, 1913, and in pursuance thereto a guardian deed was executed on the 5th day of August, 1913. No authorities have been called to our attention that pass squarely on this proposition. Here we are confronted with two courts of the state of Oklahoma as successors to the federal court which had jurisdiction of these matters prior to statehood. The county court of Bryan county, as a successor to the United States court of the Central district at Durant, succeeded to and became vested with jurisdiction of this guardianship matter that was pending in the federal court of the Central district prior to statehood.

In the case of Eaves v. Mullen, 25 Okla. 679, 107 Pac. 433, in the first paragraph of the syllabus this court said:

"A guardianship proceeding pending in one of the United States courts of the Indian Territory at the time of admission of the states was, by section 19 of the Enabling Act (Act June 16, 1906, c. 3335, 34 Stat. 277) and section 23 of the Schedule of the Constitution, transferred to the county court of the county in which was located the court in which the case was pending."

Under this holding the county court of Bryan county, as successor to the United States court of the Central district at Durant, acquired jurisdiction of this guardian and guardianship matter, with power to sell and convey all lands belonging to said minors within the state of Oklahoma. And this jurisdiction was exclusive of every other county court in the state of Oklahoma.

It is contended by the defendant in error that the county court of Carter county was the successor to the federal court in this sale proceeding. To agree with this contention would mean that two county courts in Oklahoma would have jurisdiction of the same minors and jurisdiction to sell the same tract of land. With this contention we cannot agree.

The procedure provided by the Arkansas statutes in force before statehood in the Indian Territory provided that sale of minors' land should be made by the court in whose jurisdiction the land lay. This was an ancillary proceeding to the main guardianship matter; was a matter of procedure for the sale of land by guardian. And as the sale had not been consummated and confirmed by the United States court prior to statehood, we are of the opinion that after statehood and the laws of Oklahoma became effective, this procedure was changed and that the county court of Carter county was without jurisdiction to confirm said sale, for the reason that the county court of Bryan county had exclusive jurisdiction of this guardianship matter.

Section 1479, C. O. S. 1921, same being

section 6566, Rev. Laws of 1910, reads as follows:

"No order of sale granted in pursuance of this article (chapter) continues in force more than one year after granting the same, without a sale being had."

This section of the statute was in force and effect at the date the county court of Carter county attempted to confirm this sale. Approximately six years having elapsed since this attempted sale, and as no sale had been confirmed, no sale had been consummated; and the action of the county court, in attempting to confirm the sale made six years prior to the date of confirmation, was a contravention of this statute. We are of the opinion that the order of confirmation made by the county court of Carter county on the 14th day of July, 1913, is void and of no effect, and that the deed made in pursuance thereof on the 5th day of August, 1913, is void and of no effect.

It is next contended by the defendant in error that W. M. Patterson was barred by the seven years statute of limitations provided for in Mansfield's Digest. With this contention we cannot agree, for the reason that the agreed statement of facts shows that W. M. Patterson had made no deed to any interest that he owned in said real estate, and that the purported guardian deed of October 8, 1907, having been executed without said sale being approved and confirmed by the court, was absolutely void on its face and did not attempt to convey any interest of W. M. Patterson, and was insufficient to convey any title or to set the statute of limitations in operation as to W. M. Patterson.

It is next contended that certain of the plaintiffs who had attained majority are barred by the statutes of limitations of Oklahoma. Having held that W. M. Patterson, the husband, took the curtesy right in the land of his deceased wife, then would the statute of limitations run against the children who took the remainder? In the case of Orthwein v. Thomas, 127 Ill. 554, 11 Am. St. Rep. 159, the Supreme Court of Illinois, in discussing a case parallel with the facts in this case, said:

"Until the death of the life tenant, no statute of limitations began to run against the heirs of Susannah Osborn or their grantees; and laches can only be imputed to them from the time their right of entry accrued." Jackson v. Johnson (N. Y.) 15 Am. Dec. 433.

We therefore must conclude that the statute of limitations does not begin to run against the plaintiffs, who own the remainder interest in said land, until the life estate has terminated.

The cause is therefore reversed and remanded, with direction to enter judgment for plaintiffs.

MASON, PHELPS, LESTER, HUNT, and RILEY, JJ., concur.

Note.—See under (1) 31 C. J. p. 525, § 99. (2) 25 C. J. p. 984, § 363. (3) 21 C. J. p. 1013, § 173. (4) 28 C. J. p. 1186. § 322; p. 1192, § 333 (1926 Anno).